UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ADRIAN FRIDMAN,

       Plaintiff,

v.                                                                       Case No. 6:16-cv-2020-Orl-37KRS

SAFECO INSURANCE COMPANY OF
ILLINOIS,

       Defendant.

_____

## ORDER

This cause is before the Court on consideration of: (1) Plaintiff's Motion to Remand and Incorporated Memorandum of Law (Doc. 15), filed December 15, 2016; (2) Defendant's Response to Plaintiff's Motion to Remand (Doc. 16), filed December 21, 2016; and (3) Plaintiff's Reply to Defendant's Response to Plaintiff's Motion to Remand (Doc. 22), filed February 3, 2017.

## I.    BACKGROUND

Defendant Safeco Insurance Company of Illinois ("**Safeco**") and Plaintiff Adrian Fridman ("**Fridman**") are before this Court after extensive litigation in the Florida courts ("**State Proceedings**"),[1] which commenced on **April 29, 2009**, when Fridman filed a

---

[1] *See Fridman v. Safeco Ins. Co. of Ill.*, 2012 WL 609851 (Fla. 5th DCA Jan. 24, 2012) (denying motion for new trial), *rev'd Safeco Ins. Co. of Ill. v. Fridman*, 117 So. 3d 16 (Fla. 5th DCA 2013) ("***Fridman I***"), *quashed Fridman v. Safeco Ins. Co. of Ill.*, 185 So. 3d 1214 (Fla. 2016) ("***Fridman II***"); *see also Safeco Ins. Co. of Ill. v. Fridman*, 196 So. 3d 1284 (Fla. 5th DCA 2016) ("***Fridman III***") (holding on remand that trial court erred in denying Safeco its remittitur for unproved lost earnings); *Fridman v. Safeco Ins. Co. of Ill.*, 2012 WL 609852

complaint against Safeco ("**Initial Complaint**") in the Circuit Court of the Ninth Judicial

Circuit, in and For Orange County Florida ("**State Trial Court**").[2] "[I]n accordance with

the provisions of § 627.727, Florida Statutes" and insurance policy number X5140979

("**Policy**")—Fridman demanded "damages in excess of **$15,000.00**, exclusive of

prejudgment interest, costs and attorney's fees" ("**UM Claim**"), which damages arose out

of an automobile accident with an underinsured tortfeasor ("**UTF**") on **January 8, 2007**

("**Accident**").[3]

Before initiating the State Proceedings, Fridman sent Safeco multiple unsuccessful

settlement demands, which advised that:

> (1) the UTF's insurance carrier tendered **$10,000** to Fridman for the Accident ("**UTF Payment**");[4]
>
> (2) due to injuries from the Accident, chiropractor Vincent A. Preziosi, D.C. assigned Fridman a "10% permanent, partial impairment to the body as a whole," and estimated that Fridman would annually incur **$1,000** to **$1,800** in future medical expenses;[5] and
>
> (3) Fridman had incurred **$16,800** in medical bills—**$8,600** of which was paid by Safeco as personal injury protection benefits ("**PIP Payment**"), and **$8,000** of which was paid "out of pocket" by Fridman.[6]

Fridman also served Safeco with a civil remedy notice ("**CRN**"), which Safeco did not

---

(Fla. 5th DCA Jan. 9, 2012).

[2] (*See* Doc. 1-4, pp. 3–5 (providing a copy of the Initial Complaint); *see also* Doc. 2, ¶¶ 9, 10.)

[3] (*See* Doc. 1-4, pp. 3–5.)

[4] (*See* Doc. 15-1, p. 1; *see also* Doc. 1-4, p. 58; Doc. 1-5, p. 66.)

[5] (*See* Doc. 15-2, pp. 4, 5.)

[6] (*See* Doc. 15-8, p. 2; *see also* Doc. 1-4, p. 8; Doc. 15-1, p. 2.)

cure.[7] Nonetheless, Fridman *did not* assert a statutory bad faith claim ("**Bad Faith Claim**") against Safeco in his Initial Complaint.

In the year following commencement of the State Proceedings, Fridman and Safeco conducted discovery concerning Fridman's claimed injuries and economic damages ("**State Discovery**").[8] By **August 2009**, Fridman had provided Safeco with discovery responses representing that his medical expenses totaled approximately **$17,049.00**.[9] Subsequently, Fridman incurred an additional **$62,217.00** in medical expenses; however, it is unclear when Safeco learned of these additional damages.[10]

In **2011**: (a) Safeco tendered the UM Limits and requested entry of final judgment in favor of Fridman;[11] (b) after a hearing on the matter, the State Trial Court denied Safeco's request ("**Confessed Judgment Ruling**");[12] (c) Fridman then prevailed in a jury trial—obtaining a one million dollar verdict against Safeco ("**Excess Verdict**"));[13] and

---

[7] (*See* Doc. 2, ¶¶ 7, 8; Doc. 15-8.)

[8] (*See* Doc. 1-4; Doc. 1-5, pp. 14–102.)

[9] (*See* Doc. 1-4, pp. 55–56.)

[10] Based on a filing in the State Trial Court dated **September 13, 2011** ("**Medical Expense Summary**"), it appears that Fridman incurred an additional **$8,161.04** in medical expenses prior to **January 25, 2010**. (*See* Doc. 1-5, pp. 117–19.) Further, on unspecified dates between **February 17, 2010** and **July 22, 2011**, Dr. Scott Katzman billed Fridman **$51,656.00** in medical charges. (*See id.*)

[11] (*See* Doc. 1-4, pp. 324–25, 357–59, 373–75, 423–39; Doc. 2, ¶¶ 12.)

[12] (*See* Doc. 1-4, pp. 355, 391–410 (providing transcript of hearing before State Trial Court); Doc. 1-5, pp. 6–7 (providing a copy of the Confessed Judgment Ruling); *see also* Doc. 2, ¶ 13.)

[13] The Excess Verdict specified that Fridman was entitled to: (a) **$80,000.00** for past medical expenses; (b) **$300,000.00** for future medical expenses; (c) **$270,000.00** for lost earnings in the past and future; and (d) **$350,000.00** for past and future pain and suffering. (*See* Doc. 15-9; *see also* Doc. 1-5, pp. 274–79 (minutes of jury trial); *id.* at 416–524 (trial transcripts); Docs. 1-6, 1-7, 1-8 (trial transcripts); Doc. 1-9, pp. 1–129 (trial transcripts).)

(d) the State Trial Court entered judgment in favor of Fridman and against Safeco in "the

sum of **$50,000.00** . . ., notwithstanding the [Excess Verdict]" ("**2011 Judgment**").[14] In the

2011 Judgment, the State Trial Court reserved "jurisdiction to determine" Fridman's right

to amend his Complaint to assert a Bad Faith Claim against Safeco "as a result of" the

Excess Verdict ("**Reserved Jurisdiction Ruling**").[15]

On direct appeal to the Fifth District Court of Appeals for the State of Florida

("**State Appellate Court**"), Safeco challenged the Confessed Judgment Ruling, the Excess

Verdict, and the Reserved Jurisdiction Ruling.[16] Ruling in favor of Safeco, the State

Appellate Court: (1) held that the State Trial Court should have entered the confessed

judgment in favor of Fridman as Safeco requested; and (2) directed the State Trial Court

on remand to "enter an amended final judgment deleting any reference to the [Excess

Verdict] and declining to reserve jurisdiction to consider a request to amend the

complaint to add a [Bad Faith Claim]." *Fridman I*, 117 So. 3d at 20–21. On remand, the

State Trial Court entered an amended final judgment as directed by the State Appellate

Court ("**2013 Judgment**").[17]

---

[14] The damages Fridman could recover under the UM Claim were capped at **$50,000**, which was the maximum uninsured motorist insurance benefits available to Fridman under the Policy ("**UM Limits**"). (*See* Doc. 1-5, pp. 281–83 (conceding that Fridman's "current right to a Judgment is limited to the sum of $50,000.00," and requesting that the State Trial Court reserve jurisdiction to determine Fridman's right to amend the Complaint to assert a Bad Faith Claim to recover the remainder of the Excess Verdict); *see id*. at 323–24 (conceding that Fridman "is legally entitled to recover" $50,000.00 from Safeco); Doc. 2-1 (providing a copy of the Policy).)

[15] (*See* Doc. 1-5, pp. 325–26 (providing a copy of the 2011 Judgment); *see also id*. at 345–46 (noting that the 2011 Judgment "is the proper judgment").)

[16] (*See* Doc. 1-10, pp. 282–335, 393–413; *see also id*. at 336–92; Doc. 1-12, pp. 2–4.)

[17] (*See* Doc. 1-10, p. 207.)

Fridman sought reconsideration or review of the State Appellate Court's decision,[18] and the Florida Supreme Court invoked its jurisdiction over the matter on **April 14, 2014**. *Fridman v. Safeco Ins. Co. of. Ill.*, 145 So. 3d 823 (Fla. 2014). After full briefing and oral argument,[19] the Florida Supreme Court held that:

> (1)    the Consent Judgment Ruling was proper because Fridman was "entitled to a determination of liability and the full extent of his . . . damages in the UM action before filing a first-party bad faith action";
>
> (2)    the Excess Verdict is "binding, as an element of damages, in a subsequent first-party bad faith action against [Safeco] so long as the parties have the right to appeal any properly preserved errors in the [Excess Verdict];" and
>
> (3)    the State Trial Court "did not err in retaining jurisdiction to allow the filing of a bad faith cause of action."

*See Fridman II*, 185 So. 3d at 1216, 1229–30. Hence *Fridman I* was quashed, and the matter was remanded to the State Appellate Court. *See id.* at 1230.

On remand, the State Appellate Court held that the State Trial Court erred in denying Defendant's request for remittitur of lost earnings damages, and remanded for further proceedings. *See Fridman III*, 196 So. 3d at 1285. The State Trial Court then vacated

---

[18] (*See* Doc. 1-12, pp. 301–02 (requesting that the Florida Supreme Court invoke its jurisdiction to review *Fridman I*); Doc. 1-13, pp. 37–49 (Fridman's Jurisdictional Brief); *id.* at 88–101 (Safeco's Jurisdictional Brief); *see also* Doc. 1-12, pp. 265–81 (requesting rehearing or certification to the Florida Supreme Court); *id.* at 282–95 (opposing rehearing or certification); *id.* at 299–300 (denying rehearing and certification); *id.* at 329–75 (Fridman's Reply Brief).)

[19] (*See* Doc. 1-13, pp. 119–66 (Fridman's Initial Brief); *id.* at 241–95 (Safeco's Answer Brief); *id.* at 368–82 (concerning Safeco's request for supplemental briefing).)

the 2013 Judgment and entered an amended final judgment (*see* Doc. 1-1 ("**Final Judgment**")). The Final Judgment provided that: (1) Fridman had already accepted Safeco's tender of the UM Limits, which was all Fridman was "entitled to recover" from Safeco; (2) the trial court reserved "jurisdiction to determine [Fridman's] right to amend his [Initial] Complaint" to assert a Bad Faith Claim; and (3) if Fridman prevails on a Bad Faith Claim, then he "will be entitled to a judgment" of **$692,632.91** in accordance with the jury's remitted Excess Verdict, "plus any other damages allowed by the law."[20]

Based on the Final Judgment, Fridman sought leave to amend his Initial Complaint to assert his Bad Faith Claim ("**Motion to Amend**").[21] After conducting a hearing on **October 26, 2016** (Doc. 16-1 ("**Amendment Hearing**")), the State Trial Court granted the Motion to Amend on **October 28, 2016** (Doc. 1-11, p. 39 ("**Amendment Order**")). Fridman then filed an amended complaint on **November 7, 2016** (Doc. 2 ("**Amended Complaint**")), which set forth a single Bad Faith Claim against Safeco.

On **November 18, 2016**, Safeco removed the action to this Court based on diversity jurisdiction under 28 U.S.C. § 1332.[22] (Doc. 1 ("**Notice of Removal**").) According to the Notice of Removal, Safeco was "entitled to remove within 30 days of [the] filing" of the Amended Complaint because such pleading reflected Fridman's first assertion of a Bad Faith Claim, "which is a separate and distinct cause of action." (*See id.* ¶ 5 (citing

---

[20] (*See* Doc. 1-1; *see also* Doc. 1-10, pp. 497–99; Doc. 1-11, pp. 24–31.)

[21] (*See* Doc. 1-10, pp. 500–08.)

[22] In diversity cases, district courts have original jurisdiction when the parties are completely diverse and the amount in controversy exceeds $75,000 ("**AIC**"). *See* 28 U.S.C. § 1332(a).

28 U.S.C. § 1441 and *Lahey v. State Farm Mut. Auto. Ins. Co.*, 8:06-cv-1949-T-27TBM, 2007 WL 2029334, at *2 (M.D. Fla. 2007).)) Fridman timely moved for remand (Doc. 15 ("**Remand Motion**")), Safeco responded (Doc. 16), and Fridman replied (Doc. 22).[23] The matter is now ripe for the Court's consideration.

## II.    LEGAL STANDARDS

Although plaintiffs are well-recognized to be the master of their own claims,[24] Congress has conferred a limited right on defendants to remove a civil action from state court to "the district court of the United States for the district and division within which such action is pending." *See* 28 U.S.C. § 1446(a); *see Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). Defendants may remove only those "actions that originally could have been filed in federal court,"[25] and they bear the burden of proving by a preponderance of the evidence that original jurisdiction exists ("**Removal Jurisdiction**"). *See Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001); *see also Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1207–09 (11th Cir. 2007); *Fowler v. Safeco Ins. Co. of Am.*, 915 F.2d 616, 617 (11th Cir. 1990).

---

[23] In accordance with the requirements of 28 U.S.C. § 1446(a), Safeco filed copies "of all process, pleadings, and orders served upon" Safeco in the State Proceedings. (*See* Docs. 1-1 through 1–17 ("**State Record**").) The State Record is voluminous.

[24] *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 n.7 (1987) (citing *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913)); *Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC*, 714 F.3d 1234, 1237 (11th Cir. 2013) ("Plaintiffs are the masters of their claims"). "[T]he plaintiff is absolute master of what jurisdiction he will appeal to." *Healy v. Sea Gull Specialty Co.*, 237 U.S. 479, 480 (1915). Such mastery means that a "plaintiff may by the allegations of his complaint determine the status with respect to removability of a case." *See Great N. R. Co. v. Alexander*, 246 U.S. 276, 282 (1918).

[25] *Caterpillar*, 482 U.S. at 392; *see* 28 U.S.C. § 1441(a).

In addition to the Removal Jurisdiction requirement, Congress also imposed time constraints on the right to remove—particularly when removal is based on diversity jurisdiction:

> **(b)** **Requirements; generally.—**
> **(1)** The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.
>
> *   *   *
>
> **(3)** Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.
>
> **(c)** **Requirements; removal based on diversity of citizenship.—**
> **(1)** A case may not be removed under subsection (b)(3) on the basis of [diversity] jurisdiction . . . more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action.

28 U.S.C. § 1446.

Plaintiffs may seek remand of a removed action back to state court based on two grounds: "(1) lack of subject matter jurisdiction; or (2) procedural defect in the removal of the case." *Russell Corp. v. Am. Home Assur. Co.*, 264 F.3d 1040, 1043–44 (11th Cir. 2001); *see* 28 U.S.C. § 1447(c). Due to "significant federalism concerns arising in the context of

federal removal jurisdiction," removal requirements and limitations are "strictly interpreted and enforced." *See Russell*, 264 F.3d at 1049. "[A]mbiguities are generally construed against removal,"[26] and "uncertainties are resolved in favor of remand." *See Burns*, 31 F.3d at 1095 (noting that the "[d]efendant's right to remove and [the] plaintiff's right to choose his forum are not on equal footing").

## III.    DISCUSSION

The Remand Motion is based on two grounds: (1) "Safeco waived its right of removal by its active participation that manifested an intent to litigate in state court" ("**Waiver Argument**"); and (2) "Safeco failed to timely file a notice of removal" ("**Timeliness Argument**"). (*See* Doc. 15, pp. 5, 7.) The Waiver Argument is meritless, the Timeliness Argument is not.

### A.    Waiver Argument

"Waiver may be a proper basis upon which to find lack of removal jurisdiction." *Codgell v. Wyeth*, 366 F.3d 1245, 1249 (11th Cir. 2004). Waiver occurs when, although the right to remove is apparent, the defendant takes "'some substantial offensive or defensive action in the state court action indicating a willingness to litigate in that tribunal . . . .'" *See Yusefzadeh v. Nelson, Mullins, Riley & Scarborough, LLP*, 364 F.3d 1244, 1246 (11th Cir. 2004) (quoting Charles A. Wright, et al., 14B Federal Practice & Procedure § 3721 (2003)); *Engle v. R.J. Reynolds Tobacco Co.*, 122 F. Supp. 2d 1355, 1360 (S.D. Fla. 2000) ("A defendant waives its right to remove . . . after it is apparent that the case is removable"

---

[26] *Jones v. LMR Int'l, Inc.*, 457 F.3d 1174, 1177 (11th Cir. 2006).

by taking action in state court that manifest "intent to have the matter adjudicated there.").

There is no dispute that the damages Fridman could recover under the claim asserted in his Initial Complaint were capped at **$50,000.00**, which is significantly less than the requisite AIC. Nonetheless, Fridman contends that his "uncured" CRN should have put Safeco on notice that the AIC was met. (*See* Doc. 15, pp. 16–17; Doc. 22, pp. 2–5.) He is wrong. "Jurisdiction may not be sustained on a theory that the plaintiff has not advanced." *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 809 n.6 (1986). An uncured CRN is not advancement of a Bad Faith Claim—it is a mere prerequisite to the filing of a Bad Faith Claim.[27] Thus, Safeco's undisputed litigiousness in the State Proceedings was no waiver because Removal Jurisdiction was not apparent—indeed, the AIC was not satisfied—until Fridman asserted his Bad Faith Claim.[28]

---

[27] *See Llaca v. State Farm Mut. Auto. Ins. Co.*, No. 6:16-cv-261-Orl-37KRS, 2016 WL 1238009, at *2 (M.D. Fla. Mar. 30, 2016) (rejecting argument that an uninsured motorist policy limit is not the ceiling for purposes of the court's jurisdictional analysis before a bad faith claim is asserted); *see also Orton v. Encompass Indem. Co.*, No. 6:15-cv-1114-Orl-40GJK, 2015 WL 12830479, at *2 (M.D. Fla. Oct. 5, 2015) (assigning bad faith claim no value for purposes of determining the AIC for a motion to remand); *Montanez v. Integon Indem. Corp.*, No. 6:15-cv-25-Orl-22KRS, 2015 WL 12839272, at *2 (M.D. Fla. Apr. 1, 2015) (same).

[28] Even if Fridman could have alleged a viable Bad Faith Claim in his Initial Complaint, he has not explained to this Court—or the State Trial Court—how Safeco should have known that the AIC was met. (*See* Doc. 16-1, pp. 7–8, 14.) Notably, the State Record indicates that Safeco would have had a hard time establishing the AIC by a preponderance of the evidence before it received the Medical Expense Summary on **September 13, 2011**. Before then, Fridman's discovery responses reflected that he had incurred only **$17,049.00** in medical expenses, which were subject to at least **$18,600.00** in setoffs for the PIP and UTF Payments. (*See supra* note 3; *see also* Doc. 1-4, pp. 8, 55–58; Doc. 1-5, p. 66; Doc. 15-1, pp. 1–2; Doc. 15-8, p. 2.)

### B.    Timeliness Argument

Again, when a defendant asserts Removal Jurisdiction under 28 U.S.C. § 1332, its notice of removal must be filed within one year of the date the plaintiff commenced the action in state court ("**One Year Limit**"). (*Supra* p. 8.) Thus, the first question is the date the removed action "commenced" for removal purposes. The parties point to different dates: (1) Fridman's date is **April 29, 2009**, when the Initial Complaint was filed; (2) Safeco's date is **November 7, 2016**, when Fridman first asserted a Bad Faith Claim in his Amended Complaint. The Court considers Florida law to resolve this dispute. *See Moultrop v. GEICO Gen. Ins. Co.*, 858 F. Supp. 2d 1342, 1346 (S.D. Fla. 2012).

In Florida, there is "one form of action to be known as 'civil' action" (Florida Rule of Civil Procedure 1.040), and such civil action "shall be deemed commenced when the complaint or petition is filed" (Rule 1.050). Pleaders "may set up in the same action as many claims or causes of action . . . in the same right as the pleader has." Fla. R. Civ. P. 1.110(g). Further, once a civil action is commenced by filing a complaint, Florida courts may allow the parties to add new claims—including separate and distinct claims added after final judgment—when justice requires.[29] *See* Fla. R. Civ. P. 1.110(h) (providing for subsequent pleadings after entry of judgment); Fla. R. Civ. P. 1.190 (permitting amended and supplemental pleadings); *see also* Fla. R. Civ. P. 1.170

---

[29] Rule 1.050 provides one exception for "ancillary proceedings," which "shall be deemed commenced when the writ is issued or the pleading setting forth the claim of the party initiating the action is filed." Because that exception does not apply here, Safeco's argument that a new civil action "commenced" when the Amended Complaint was filed is further undermined.

(permitting Counterclaims and Crossclaims); Fla. R. Civ. P. 1.180 (permitting Third Party

Complaints); Fla. R. Civ. P. 1.250(a) (permitting the addition of parties).

By its Reserved Jurisdiction Ruling, the State Trial Court determined that Fridman

should be permitted to amend his Initial Complaint to add the Bad Faith Claim and

continue in the removed action. Importantly, the Florida Supreme Court agreed over

Safeco's strenuous objections. *See Fridman II*, 185 So. 3d at 1216, 1229–30 (reasoning that

the Reserved Jurisdiction Ruling was consistent with controlling precedent—*Allstate

Indemnity Company v. Ruiz*, 899 So. 2d 1121, 1130 (Fla. 2005)—and similar to the process

of abating Bad Faith Claims that are initially filed with UM Claims). Given this law, the

Court must reject Safeco's argument that the Amended Complaint commenced a new

civil action. Hence the Court finds that the removed action commenced on **April 29, 2009**,

and the One Year Limit expired on **April 29, 2010**. Because Safeco filed its Notice of

Removal on **November 18, 2016**, the Timeliness Argument has obvious merit.

Safeco has recognized that this Court consistently remands removed insurance

disputes under circumstances similar to this action.[30] (Doc. 16, p. 14 n.5; *see Barroso v.

Allstate Prop. & Cas. Ins. Co.*, 958 F. Supp. 2d 1344, 1347 (M.D. Fla. 2013)).[31] Nonetheless,

Safeco urges the Court to deny remand in *this* case because "the procedures employed by

---

[30] This Court's approach is not uniformly embraced. Indeed, the Eleventh Circuit
has noted that a dispute exists, but it has not yet resolved the matter. *See King v. Gov't
Emps. Ins. Co.*, 579 F. App'x 796, 800 (11th Cir. 2014).

[31] *See also Washington v. Gov't Emps. Ins. Co.*, No. 6:16-cv-1775-Orl-40KRS,
2017 WL 490541, at *3–*4  (M.D. Fla. Feb. 7, 2017); *Darragh v. Nationwide Mut. Fire Ins. Co.*,
6:14-cv-104-Orl-41KRS, 2014 WL 4791993, at *4 (M.D. Fla. 2014); *van Niekerk v. Allstate Ins.
Co.*, No. 12-62368, 2013 WL 253693, at * (S.D. Fla. Jan. 23, 2013); *Moultroup v. GEICO Gen.
Ins. Co.*, 858 F. Supp. 2d 1342, 1346–47 (S.D. Fla. 2012)).

the state court" violate the Supremacy Clause of the U.S. Constitution ("**Supremacy Clause Argument**"). (*See* Doc. 16.)

The Supremacy Clause, Art. VI, cl. 2, creates "a rule of decision" for the courts:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

*Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1383 (2015). "The purpose of the Supremacy Clause is . . . to ensure that, in a conflict with state law, whatever Congress says goes." *Douglas v. Indep. Living Ctr. of S. Cal., Inc.*, 565 U.S. 606, 618 (2012). Courts violate the Supremacy Clause by giving "effect to state laws that conflict with federal laws." *See Armstrong*, 135 S. Ct. at 1383; *see also Kan. Pub. Emps. Ret. Sys. v. Reimer & Koger Assoc., Inc.*, 4 F.3d 614, 619 (8th Cir. 1993) (finding that a Kansas court violated the Supremacy Clause by entering an *ex parte* severance order with the "stated purpose" of preventing the Resolution Trust Corporation from intervening and removing a state court action as explicitly provided for under federal law, 12 U.S.C. § 1441a(l)(3)(A)).

According to Safeco, the Florida courts have violated the Supremacy Clause by employing either of two procedures to effectively foreclose proper removal of Bad Faith Claims asserted by plaintiffs—like Fridman—who have UM insurance policies with coverage limits that do not exceed the AIC:

> (1)    one procedure allows insureds to "co-plead" a Bad Faith Claim with a UM Claim and then abate the Bad Faith Claim pending resolution of the UM Claim

("**Abatement Procedure**"); and

(2)     the other procedure allows insureds who have
        prevailed on a UM Claim to amend their complaints to
        add a Bad Faith Claim ("**Amendment Procedure**").

(*See id*. at 7–14.) These procedures effectively foreclose removal because the One Year

Limit inevitably expires before a Bad Faith Claim can be added or abated. (*See id*.)

Here, Safeco contends that the Amendment Procedure was used to defeat Safeco's

"right" to remove the Bad Faith Claim. (*See id*.) Safeco urges the Court to remedy this

purported violation of the Supremacy Clause by denying the Remand Motion based on

findings that:

(1)     the Amendment Order is void and the Amended
        Complaint is "a new lawsuit, which Safeco timely
        removed;"

(2)     the One Year Limit is equitably or otherwise tolled by
        the State Court's violation of the Supremacy Clause; or

(3)     Fridman's use of the Amendment Procedure
        "constitutes bad faith under § 1446(c)."

(*See id*. at 13–14.) Upon review, the Court rejects these and other radical remedies

suggested by Safeco as unwarranted under the law.

Declaring a state law or process void under the U.S. Constitution is a weighty

matter that federal courts avoid absent absolute necessity. *See Neumont v. Fla.*,

451 F.3d 1284, 1285 (11th Cir. 2006); *see also Burton v. U.S.*, 196 U.S. 283, 295 (1905) (noting

that constitutional questions are not decided "unless absolutely necessary to a decision

of the case"); *Brown v. U.S.*, 748 F.3d 1045, 1049 (11th Cir. 2014); *907 Whitehead St., Inc. v.*

*Sec'y of U.S. Dept. of Agric.*, 701 F.3d 1345, 1349 (11th Cir. 2012). Here, the Court is

particularly hesitant to reach the constitutional issue because—as is evident from the transcript of the Amendment Hearing—Safeco did not give the State Trial Court an opportunity to pass on the matter. (*See* Doc. 16-1, pp. 5–12.) Although Safeco did complain to the State Trial Court that allowing the amendment would prejudice Safeco by preventing removal, Safeco did not explicitly argue that the Supremacy Clause prohibited the Amendment Procedure in general or the Amendment Order in particular.[32]

Safeco also has not persuaded the Court that operation of the One Year Limit in this case is inequitable or improper. To the contrary, allowing a Bad Faith Claim and a UM Claims to be asserted in a single removable "civil action" is entirely consistent with both the meaning of "civil action" discussed above (*supra* pp. 11–12), as well as the intent of Congress to prevent removal—even to the detriment of defendants—once "substantial progress" is made by the parties and the state court.[33] *See Burns*, 31 F.3d at 1097 n.12 (discussing the legislative history concerning the One Year Limit).

Here, substantial progress was made in the State Proceedings, and—although the theories of liability are quite different for a Bad Faith Claim—the State Record will not be

---

[32] Removal issues also were briefly discussed during oral argument before the Florida Supreme Court; however, the issues were not briefed, and there certainly is no indication that the Supremacy Clause was ever mentioned. (*See* Doc. 16, pp. 3–5; *see also* Doc. 1-13, pp. 368–77.)

[33] Application of the One Year Limit seems particularly appropriate here because the AIC was not met at the commencement of the State Proceeding; rather, the damages claim apparently changed over time—which is precisely the type of case where Congress intended to limit a defendant's ability to remove. (*See supra* notes 10, 28.)

immaterial to resolution of the Bad Faith Claim.[34] Similarly, the State Trial Court's practical experience and knowledge of the parties and their attorneys gained after years of litigation will plainly have value in the handling and resolution of the Bad Faith Claim. In short, the One Year Limit was not intentionally subverted by the State Court here—it simply operated as intended and in conformity with the Florida Supreme Court's approved methodology for resolution of such insurance disputes. Thus, the Court rejects Safeco's Supremacy Clause Argument.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that:

(1)     Plaintiff's Motion to Remand and Incorporated Memorandum of Law (Doc. 15) is **GRANTED**.

(2)     This action is **REMANDED** to the Circuit Court of the Ninth Judicial Circuit, in and For Orange County Florida.

**DONE AND ORDERED** in Orlando, Florida, this 20th day of May, 2017.



ROY B. DALTON JR.
United States District Judge

---

[34] This Court agrees with Safeco that a Bad Faith Claim is a "separate and distinct" cause of action from a UM Claim, and it could—and perhaps should—have been raised by Fridman in a newly-commenced action. But the Florida Supreme Court has said otherwise for reasons that are unrelated to Safeco's right of removal. Thus, the Court does not find that the Supremacy Clause is implicated under the facts presented here.

Copies to:

Counsel of Record